Citation Nr: 1714078 
Decision Date: 04/28/17 Archive Date: 05/05/17

DOCKET NO. 10-29 650 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Montgomery, Alabama


THE ISSUES

1. Entitlement to an initial disability evaluation in excess of 50 percent for posttraumatic stress disorder (PTSD).

2. Entitlement to a total disability evaluation based upon individual unemployability due to service-connected disabilities (TDIU). 

3. Entitlement to special monthly compensation (SMC).


REPRESENTATION

Appellant represented by: The American Legion


WITNESSES AT HEARING ON APPEAL

Appellant and spouse



ATTORNEY FOR THE BOARD

T. S. Kelly, Counsel 


INTRODUCTION


The Veteran, who is the appellant, served on active duty from February 1968 to February 1970. 

This matter originally came before the Board of Veterans' Appeals (Board) on appeal from a March 2008 rating decision issued in June 2008 by the Department of Veterans Affairs (VA) Regional Office (RO) in Chicago, Illinois, which granted service connection for PTSD and assigned an initial 50 percent rating, effective March 25, 2005. Jurisdiction of the matter has been transferred to the Montgomery, Alabama RO. 

In October 2014, the Veteran testified at a videoconference hearing before the undersigned Veterans Law Judge (VLJ). A transcript of the hearing is associated with the record. In testimony in support of his claim, the Veteran contended that he was unemployable due to his service-connected PTSD. 

In December 2014, the Board assumed jurisdiction of the TDIU claim and remanded the issue of a higher disability evaluation for PTSD for additional development, to include a VA examination. 

As will be discussed below, the Veteran, in this case, is also evaluated as 70 percent disabled due to diabetes mellitus and resultant neuropathy of all four extremities and is being granted SMC under 38 U.S.C.A. § 1114(s) herein.

In a written statement received in March 2017, the Veteran appears to have raised the issue of entitlement to for sleep apnea as secondary to the Veteran's service-connected PTSD. The veteran is advised that his statement does not meet the standards of an intent to file (3.155(b)) or those of a complete claim under 38 C.F.R. § 3.155(a). The AOJ should notify the Veteran as to the procedures required under 38 C.F.R. § 3.155 for filing a claim for VA benefits.


FINDINGS OF FACT

1. For the appeal period prior to September 17, 2007, psychiatric symptoms due to PTSD, and the severity of such, more nearly approximated a rating based on occupational and social impairment with deficiencies in most areas, such as work, family relations, and mood.

2. For the time period from September 17, 2007, the Veteran's service-connected PTSD disability is manifested by total occupational impairment and symptoms that approximate total social impairment.

3. Prior to September 17, 2007, the Veteran's service-connected disabilities did not render him unable to obtain and maintain gainful employment as he maintained full-time employment until that date. 

4. As a consequence of this decision, the Veteran has one service-connected disability (PTSD) rated as 100-percent disabling from September 17, 2007, and service-connected disabilities arising from a common etiology (diabetes mellitus and resultant peripheral neuropathy of all four extremities) rated as 70 percent disabling, effective August 7, 2014. 


CONCLUSIONS OF LAW

1. Resolving reasonable doubt in favor of the Veteran, the disability criteria for a 70 percent evaluation for PTSD, and no more, were met from March 25, 2005 until September 17, 2007. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 3.321(b)(1), 4.1, 4.3, 4.7, 4.130, Diagnostic Code 9411 (2016).

2. Resolving reasonable doubt in favor of the Veteran, the criteria for a 100 percent evaluation for PTSD have been met from September 17, 2007. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 3.321(b)(1), 4.7, 4.130, Diagnostic Code 9411 (2016).

3. The criteria for a TDIU were not met for the period prior to September 17, 2007. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 3.340, 3.341, 4.16 (2016).

4. The criteria for entitlement to SMC (special monthly compensation) at the housebound rate from August 7, 2014, are met. 38 U.S.C.A. § 1114(s) (West 2014); 38 C.F.R. § 3.350(i) (2016); Bradley v. Peake, 22 Vet. App. 280 (2008).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R §§ 3.102, 3.156(a), 3.159, 3.326(a) (2016). Proper VCAA notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; (3) and that the claimant is expected to provide. 38 U.S.C.A. § 5103 (a); 38 C.F.R. § 3.159(b)(1). For claims pending before VA on or after May 30, 2008, 38 C.F.R. § 3.159 has been amended to eliminate the requirement that VA request that a claimant submit any evidence in his or her possession that might substantiate the claim. 73 Fed. Reg. 23,353 (Apr. 30, 2008). 

As it relates to the PTSD claim and the resulting TDIU claim, as the Veteran's appeal arises from his disagreement with the initial rating following the grant of service connection no additional notice is required. The United States Court of Appeals for Veterans Claims (Court) and the United States Court of Appeals for the Federal Circuit (Federal Circuit) have held that, once service connection is granted, the claim is substantiated, additional notice is not required, and any defect in notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007).

The Board finds that there has been substantial compliance with the assistance provisions set forth in the law and regulations. The record in this case includes service treatment records, private treatment reports and records, VA treatment records, VA examination reports, Social Security records, and lay evidence, to include testimony of the Veteran at his October 2014 hearing. No additional pertinent evidence has been identified by the claimant as it relates to his claim for a higher disability evaluation or TDIU claim. 

As it relates to the necessity for an examination, the Veteran was afforded numerous VA examinations throughout the course of the appeal. The results from these examinations are sufficient in order to properly address the Veteran's claim. When VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The Board finds that the VA examinations are adequate for rating purposes, because they were performed by medical professionals, were based on a thorough examination of the Veteran, and reported findings pertinent to the rating criteria. Nieves-Rodriguez v. Peake, 22 Vet. App 295 (2008); see Barr v. Nicholson, 21 Vet. App. 303 (2007) (holding that VA must provide an examination that is adequate for rating purposes).

The Veteran has been afforded a meaningful opportunity to participate effectively in the processing of the claim, including by submission of statements and arguments by his representative and by providing testimony at his October 2014 hearing, which resulted in a Board remand for further development. The requested development was performed and complied with the directives of the Board remand. For these reasons, it is not prejudicial to the Veteran for the Board to proceed to finally decide the appeal. Based upon the foregoing, the duties to notify and assist the Veteran have been met, and no further action is necessary to assist the Veteran in substantiating this claim.


PTSD

Disability evaluations are determined by the application of the Schedule for Rating Disabilities, which assigns ratings based on the average impairment of earning capacity resulting from a service-connected disability. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. It is the defined and consistently applied policy of VA to administer the law under a broad interpretation, consistent, however, with the facts shown in every case. Any reasonable doubt regarding the degree of disability is resolved in favor of the Veteran. See 38 C.F.R. § 4.3. 

Where the appeal arises from the original assignment of a disability evaluation following an award of service connection, the severity of the disability at issue is to be considered during the entire period from the initial assignment of the disability rating to the present time. See Fenderson v. West, 12 Vet. App. 119 (1999).

In view of the number of atypical instances it is not expected, especially with the more fully described grades of disabilities, that all cases will show all the findings specified. Findings sufficiently characteristic to identify the disease and the disability therefrom, and above all, coordination of rating with impairment of function will, however, be expected in all instances. 38 C.F.R. § 4.21 (2016). In order to evaluate the level of disability and any changes in condition, it is necessary to consider the complete medical history of a veteran's condition. Schafrath v. Derwinski, 1 Vet. App. 589, 594 (1991). 

The General Formula for Rating Mental Disorders, Diagnostic Code 9411, provides that a 50 percent evaluation requires occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships.

A 70 percent evaluation is assigned for occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work like setting); inability to establish and maintain effective relationships. The criteria for a 70 percent rating are met if there are deficiencies in most of the areas of work, school, family relations, judgment, thinking, and mood. Bowling v. Principi, 15 Vet. App. 1, 11-14 (2001). 

A 100 percent evaluation is assigned for total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. 38 C.F.R. § 4.130, Diagnostic Code 9411.

The symptoms cited above follow the phrase "such symptoms as" which indicates that the symptoms after that phrase are not intended to constitute an exhaustive list, but rather are to serve as examples of the type and degree of the symptoms, or their effects, that would justify a particular rating. Accordingly, the Board has not required the presence of all or most of the enumerated symptoms for any particular rating. The list of symptoms merely provides guidance as to the severity of symptoms contemplated for each rating, in addition to permitting consideration of other symptoms, particular to each veteran and disorder, and the effect of those symptoms on the claimant's social and work situation. The Board must consider all symptoms of the veteran's condition which affect the level of occupational and social impairment. If the evidence demonstrates that a claimant suffers symptoms or effects that cause occupational or social impairment equivalent to what would be caused by the symptoms listed in the diagnostic code, the appropriate, equivalent rating will be assigned. Mauerhan v. Principi, 16 Vet. App. 436, 441-443 (2002).

The Global Assessment of Function (GAF) is a scale reflecting the "psychological, social, and occupational functioning in a hypothetical continuum of mental health-illness." American Psychiatric Association : DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (DSM), 32 (4th ed.) (1994) (DSM IV); 38 C.F.R. §§ 4.125 , 4.130 (2015). GAF scores from 71 through 80 is indicative that, if symptoms are present, they are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family argument); no more that slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in school work). Scores ranging from 61 through 70 reflect some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, and has some meaningful interpersonal relationships. Scores ranging from 51 through 60 reflect moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). Scores ranging from 41 through 50 reflect serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job). A GAF score of from 31 through 40 contemplates some impairment in reality testing or communication (e.g., speech at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work). A score from 21 to 30 is indicative of behavior which is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment or inability to function in almost all areas. See Carpenter v. Brown, 8 Vet. App. 240, 242 (1995).

The Veteran maintains that the symptomatology associated with his service-connected PTSD warrants a disability evaluation higher than that which is currently assigned. 

In conjunction with his claim, the Veteran submitted a June 2006 report from R. E., Ph.D., who diagnosed the Veteran as having both PTSD and anxiety disorder/panic attacks. He noted that when the Veteran began to talk about his Vietnam experiences, he began to almost work up a sweat; and it appeared he had an increased heart rate, almost as if he let the information possess his ability to control his body. He noted that the past events continued to cripple the Veteran's ability to fully function and have relationships with the opposite sex. He observed that over the years the Veteran had lived in an isolated environment, alone in a two bedroom apartment. He continued to isolate himself from his family even though he lived on a family property. Dr. E. indicated that the Veteran reported having recurring flashbacks of his military experiences, which were vivid and caused him to have insomnia and fear of sleeping due to the nightmares. He noted that the Veteran tried to work many hours to make himself tired so he had no choice but to sleep. The Veteran stated that past events continued to haunt him, left him feeling frustrated, sad, depressed, and emotionally numb at times. He also experienced anxiety when hearing news about the Iraq war. He noted that the Veteran could no longer hold his thoughts about his mental health and wanted to share with others for help. He observed that the Veteran was fearful that when he retired his inability to deal with his past trauma would increase. Dr. E. assigned a GAF score of 47. 

In conjunction with his claim, the Veteran was afforded a VA examination in August 2007. At the time of the examination, the Veteran reported having repeated flashbacks triggered by loud noises, fireworks, helicopter sounds, etc. He was averaging only 2-3 hours of sleep per night and would wake up in a cold sweat. He also reported doing a great deal of pacing. He had nightmares 4-5 times per week and would attack anyone if awakened. He experienced anhedonia with loss of all past interests. He was hypervigilant, preferring to avoid crowds and sit with his back to the wall to observe the door. He had survivor guilt with passive suicidal ideation. The Veteran also had emotional blunting and isolated himself and was irritable to the point of getting in many verbal altercations. All symptoms were noted to have increased in frequency and intensity by unstructured time and frustration over continuous Iraq war news. 

Mental status examination revealed he was oriented times four, recent and remote memory were good but concentration was extremely poor. He appeared distant with a vacant stare. His affect was sad and anxious. Speech was coherent and relevant but showed some psychomotor slowing. There was some concreteness in abstracting ability. Judgement was poor and the Veteran admitted to passive suicidal ideation and survivor guilt. He also admitted to hypervigilance and anhedonia. He had nightmares and flashbacks but showed no other delusions or hallucinations.

The examiner rendered a diagnosis of PTSD and assigned a GAF score of 30. The examiner indicated that the Veteran's PTSD symptoms were poorly controlled by the structure of his work and noted that he was recently fired. He stated that unstructured time had caused a marked deterioration in the Veteran's condition and that the war news had increased all symptoms. He noted that the Veteran had not yet received treatment for PTSD because he was ashamed of what he saw as a weakness but was advised to seek such treatment since his condition had not improved and he remained isolated, hypervigilant, irritable, unable to work with others or supervisors, and had poor concentration and very poor social functioning. The examiner stated that the Veteran's PTSD had made him permanently disabled. 

In his April 2009 notice of disagreement, the Veteran indicated that he had married his wife in 2005 and that she was now turning against him. He reported that she stated that he had nightmares where he would thrash about yelling profanities. As a result, they slept in separate bedrooms. She indicated that he appeared to be fighting with someone and noted that she had bruises where she claimed he had hit her during those times. The Veteran stated that his wife said this happened so often she was afraid for her life and had moved out of the bedroom. He also noted that he was tired about her complaining about his hygiene and trying to get him to bathe, because if he did they would attack. He stated that when you know that you could be attacked at anytime, you could not let anything deter you and let your guard down. He stated that if he bathed, he could not take his weapons, ammunition, supplies, or equipment with him and that he had to be alert and on guard for the attack. He tried to get her to understand that bathing was not necessary for survival. He also noted that he was tired about her complaining about not going places and not getting out of the house, to include not going around family and friends. He stated that if he left he would be attacked. The Veteran indicated that he did not need to be around people or to go places because he would be attacked. He stated that at times he suspected they were talking to her and would convince her to join them against him. He noted that he had heard his wife talking about him. 

Records obtained from the Social Security Administration reveal that the Veteran was found to be disabled for Social Security purposes from September 17, 2007, his last day of employment, as a result of a primary diagnosis of anxiety-related disorders and as a secondary to other and unspecified arthropathies. 

At the time of a January 2014 VA examination, the Veteran was noted to have a depressed mood, anxiety, panic attacks, chronic sleep impairment, disturbances of mood and motivation, and difficulty in establishing and maintaining effective work and social relationships. The Veteran reported intermittent irritability, low frustration tolerance, and a quick temper. He noted engaging in verbal altercations with others. He endorsed some thoughts of harming others. His appetite was noted to be okay, he had no sex drive, and his sleep was not good as a result of the nightmares. He reported having panic attacks and hypervigilance with crowds. He also heard others talking when no one was there. He further noted being able to see through people like an x-ray machine. He stated that visual and auditory perceptions had been with him for a while. He also reported that he trusted no one. 

At his October 2014 hearing before the undersigned Veterans Law Judge, the Veteran testified that his symptoms were worsening. He reported having trouble sleeping and having intense nightmares. He indicated he was up all night moving around. He noted having hit his wife in his sleep. He also reported constantly checking the security of the home. He further testified as to having suicidal and homicidal thoughts. He also reported having road rage. He indicated that his wife put up with him. His spouse stated that his problems had increased. The Veteran left the room during the hearing and his wife indicated that his problems had increased in severity and that there was no intimacy. She noted that he sat in the chair and had to be forced to take a bath. She also reported that he was very isolated and detached. The Veteran reported having panic attacks at any time, especially if in a crowd. He also indicated that they never had company visit. 

In conjunction with the December 2014 Board remand, the Veteran was afforded an additional VA examination in November 2015. At that time, a diagnosis of PTSD with depressive features was rendered. At the time of the examination, the Veteran was noted to live with his spouse and both stated that the marriage was not good. His sleep problems disrupted his wife's sleep. He noted that he was hard to live with and was very isolative. He had limited contact with his family and no social relationships. He spent most of his day sitting in his tool room meditating. He stated he could not watch TV as it reminded him of Vietnam. He reported having frequent suicidal ideations. He indicated that he had installed security sensors around the house. The examiner stated that the Veteran was experiencing depressed mood, anxiety, suspiciousness, panic attacks more than once a week, chronic sleep impairment, memory loss, disturbances in mood and motivation, difficulty in establishing and maintaining effective work and social relationships, and suicidal ideation. 

The examiner reported that the Veteran would have problems interacting effectively with supervisors or co-workers due to irritability/anger and strong tendencies to isolate; would have reduced work performance due to attention/concentration and short term memory problems; would have problems with anxiety/hypervigilance in a workplace that involved a lot of people or a significant amount of noise; would have frequent daytime fatigue and struggles with mental stamina due to sleep disturbance and nightmares; and would have difficulty in positions with high emotions, cognitive, or social demands. 

Time Period Prior to September 17, 2007

After reviewing all of the evidence of record, to include findings from VA examinations, private psychiatric evaluations, and lay evidence from the Veteran, the Board finds that the Veteran's PTSD symptoms prior to this time included: depression, anxiety, panic attacks, disturbance of motivation and mood, difficulty in establishing and maintaining effective work and social relationships, difficulty adapting to stressful circumstances including work or a work like setting, inability to establish and maintain effective relationships, and obsessional rituals which interfered with routine activities. The Board finds based on VA and private examinations of the Veteran and his self-report of symptoms, and lay evidence, that PTSD symptoms were most consistently identified as interfering with his occupational and social functioning involved reported depression, anxiety, impulse control to include anger outbursts, difficulty adapting to stressful circumstances including at work, difficulty with concentration, and a difficulty or inability in establishing and maintaining effective work and social relationships.

The Board finds that the evidence is at least in equipoise as to whether the Veteran's PTSD resulted in occupational and social impairment with deficiencies in most areas such as work, family relations, judgement, thinking, or mood as indicated for a higher 70 percent evaluation for PTSD. The Board finds that the private and VA examinations of record prior to this time provided competent, credible, and probative evidence with regard to the severity of the Veteran's PTSD. The Board also finds that the Veteran's symptoms of having had difficulty in adapting to stressful circumstances at work, difficulties with anger outbursts at work and at home, and difficulty or inability to establish or maintain effective work and social relationships were consistent with a higher 70 percent rating for PTSD, and these symptoms were supported by lay evidence of record. Resolving reasonable doubt in the Veteran's favor, the Board finds that for the rating period prior to September 17, 2007, the severity of the Veteran's psychiatric symptoms, overall, more nearly approximated the criteria for assignment of a 70 percent rating under Diagnostic Code 9411.

The Board has reviewed all of the evidence of record, lay and medical, and finds that the Veteran did not meet the criteria for a higher 100 percent disability rating for PTSD during this time period. See 38 C.F.R. § 4.130. The record does not indicate total occupational and social impairment, due to symptoms of such a severity as described for a 100 percent evaluation for PTSD. The Board notes that while the August 2007 VA examiner indicated that the Veteran had become too disabled to work as a result of his PTSD and had been fired earlier that month, the Veteran has reported on numerous occasions, including in Social Security records and in his July 2014 TDIU application, that he worked on a full-time basis until September 17, 2007. Moreover, the Board finds that total social impairment was not indicated prior to this time as the Veteran was able to maintain relationships with his spouse and some family members.

The Board finds that PTSD symptoms and the severity of such did not result in total occupational and social impairment as indicated for a 100 percent rating prior to September 17, 2007. The Board finds that the overall degree of severity of the Veteran's psychiatric symptoms and functional impairment was not consistent with a 100 percent rating for PTSD, and more closely approximated a severity of symptoms or functional impairment indicated for 70 percent rating for PTSD.

The Board also has considered whether referral for extraschedular consideration for this time period is warranted. An extraschedular disability rating is warranted based upon a finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization that would render impractical the application of the regular schedular standards. 38 C.F.R. § 3.321(b)(1); see Fanning v. Brown, 4 Vet. App. 225, 229 (1993).

Under Thun v. Peake, 22 Vet App 111 (2008), there is a three-step inquiry for determining whether a Veteran is entitled to an extraschedular rating. First, the Board must determine whether the evidence presents such an exceptional disability picture that the available schedular ratings for that service-connected disability are inadequate. Second, if the schedular rating does not contemplate the claimant's level of disability and symptomatology and is found inadequate, the Board must determine whether the claimant's disability picture exhibits other related factors such as those provided by the regulation as "governing norms." Third, if the rating schedule is inadequate to evaluate a Veteran's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the VA Under Secretary for Benefits or the Director of the Compensation Services to determine whether the Veteran's disability picture requires the assignment of an extraschedular rating. 

Turning to the first step of the extraschedular analysis, the Board finds that the symptomatology and impairment caused by PTSD are specifically contemplated by the schedular rating criteria, and no referral for extraschedular consideration is required. Diagnostic Code 9411 specifically provides for disability ratings based on a combination of clinical psychiatric symptoms and findings. In this case, considering the lay and medical evidence, the Veteran's PTSD is manifested by symptoms which include, but are not limited to, depression, anxiety, problems with impulse control to include anger outbursts, difficulty adapting to stressful circumstances, difficulty with concentration, sleep impairment, and a difficulty or inability in establishing and maintaining effective work and social relationships. These symptoms are part of or similar to symptoms listed under the schedular rating criteria. 

The schedular rating criteria specifically include occupational and social impairment with deficiencies in most areas, and as caused by specific psychiatric symptoms. The schedular rating criteria also include analogous symptoms that are "like or similar to" listed schedular rating criteria. Mauerhan, 16 Vet. App at 442; see also 38 C.F.R. § 4.21 (2016). Additionally, the Board has considered the evidence, lay and medical, with regard to the Veteran's overall functional and occupational impairment caused by PTSD. For these reasons, the Board finds that the schedular rating criteria are adequate to rate the Veteran's PTSD, and referral for consideration of an extraschedular evaluation is not warranted.

In the absence of these factors, the Board finds that the requirements for a referral for consideration of the assignment of an extraschedular evaluation for the Veteran's disability under the provisions of 38 C.F.R. § 3.321(b)(1) have not been met. See Bagwell v. Brown, 9 Vet. App. 337 (1996); Shipwash v. Brown, 8 Vet. App. 218, 227 (1995).

Further, according to Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a veteran may be entitled to "consideration [under 38 C.F.R. § 3.321(b)] for referral for an extra-schedular evaluation based on multiple disabilities, the combined effect of which is exceptional and not captured by schedular evaluations." Referral for an extraschedular rating under 38 C.F.R. § 3.321(b) is to be considered based upon either a single service-connected disability or upon the "combined effect" of multiple service-connected disabilities when the "collective impact" or "compounding negative effects" of the service-connected disabilities, when such presents disability not adequately captured by the schedular ratings for the service-connected disabilities. 

In this case, the Veteran has not asserted, and the evidence of record has not suggested, any such combined effect or collective impact of multiple service-connected disabilities that create such an exceptional circumstance to render the schedular rating criteria inadequate. In this case, there is neither allegation nor indication that the collective impact or combined effect of more than one service-connected disability presents an exceptional or unusual disability picture to render inadequate the schedular rating criteria.

As noted above, a TDIU prior to this time is not warranted as the Veteran was employed on a full-time basis until September 17, 2007. 

Time Period From September 17, 2007

Resolving reasonable doubt in favor of the Veteran the criteria for a 100 percent schedular evaluation for PTSD have been met from September 17, 2007 forward.

The only criteria for a total disability rating for any disability rated in accordance with the VA General Rating Formula for Mental Disorders are total occupational and social impairment. Sellers v. Principi, 372 F.3d 1318, 1324 (Fed. Cir. 2004) 

The Veteran has been unemployed at all times from September 17, 2007. He has been assigned GAF scores that denote an inability to maintain employment and has been found by VA examiners to be unemployable as a result of his PTSD. The Social Security Administration, whose decisions while not binding upon VA are strongly considered when making determinations, found the Veteran to be unemployable, with the primary diagnosis being psychiatric disability, as of September 17, 2007, which coincides with the Veteran's last day of full-time employment. While psychiatric disabilities other than PTSD have been identified, all have been evaluated as a single service connected entity, and no examiner has distinguished service-connected and non-service connected disability. Cf. Mindenhall v. Brown, 7 Vet App 271 (1994). 

The Veteran does not have total social impairment inasmuch as he continues to live with and remain married to his spouse. However, his social circle is extremely limited. His symptoms thus approximate total social and occupational impairment. 38 C.F.R. § 4.7, 4.21 (2016). The criteria for a 100 percent rating are therefore met.

TDIU

At the outset, the Board notes that in Bradley v. Peake, 22 Vet. App. 280 (2008), the United States Court of Appeals for Veterans Claims (Court) determined that a separate TDIU rating predicated on one disability may be awarded if that disorder is not ratable at the schedular 100 percent level. However, a separate TDIU rating cannot be awarded based on one service-connected disability if the Veteran is already receiving a 100 percent scheduler rating for that disorder. Buie v. Shinseki, 24 Vet. App. 242 (2010). 

In this case, the Veteran has been awarded entitlement to a 100 percent rating for PTSD beginning September 17, 2007. A review of the record shows that the Veteran has not alleged that service-connected disabilities, without regard to his PTSD, render him unable to obtain and maintain gainful employment. In fact, the Veteran has specifically alleged that his PTSD is a significant factor in his inability to work. Therefore, the findings in Bradley are not applicable in this case, and the issue of entitlement to TDIU beginning September 17, 2007, is moot as the Veteran is in receipt of a schedular 100 percent rating for his PTSD for that period. 

The evidence of record indicates that, prior to September 17, 2007, the Veteran did not report that he was unable to obtain and maintain gainful employment as a result of his service-connected PTSD. This was noted in the SSA determination and in the Veteran's TDIU application. 

As the Veteran was working up until September 17, 2007, the Board finds that there are no unusual or exceptional disability factors warranting referral of the Veteran's claim for TDIU under 38 C.F.R. § 4.16(b). Accordingly, the Board finds that the preponderance of the evidence is against the claim and entitlement to TDIU prior to September 17, 2007, is not warranted. 38 U.S.C.A. § 5107(b) (West 2014); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

SMC

SMC is "special" monthly compensation in addition to that which the Veteran otherwise receives for his service-connected disability or disabilities.

VA has a "well-established" duty to maximize a claimant's benefits. See Buie v. Shinseki, 24 Vet. App. 242, 250 (2011); AB v. Brown, 6 Vet. App. 35, 38 (1993); see also Bradley v. Peake, 22 Vet. App. 280 (2008). This duty to maximize benefits requires VA to assess all of a claimant's disabilities to determine whether any combination of disabilities establishes entitlement to SMC under 38 U.S.C.A § 1114. See Bradley, 22 Vet. App. 280, 294 (2008) (finding that SMC "benefits are to be accorded when a Veteran becomes eligible without need for a separate claim").

SMC is payable at the housebound (HB) rate where the Veteran has a single service-connected disability rated as 100-percent disabling and, in addition: (1) has a service-connected disability or disabilities independently ratable at 60 percent, separate and distinct from the 100 percent service-connected disability, and involving different anatomical segments or bodily systems, or (2) is permanently HB by reason of service-connected disability or disabilities. 38 U.S.C.A. § 1114(s); 38 C.F.R. § 3.350(i).

The Board notes that in addition to PTSD being at 100 percent from September 7, 2007, service connection prior to August 7, 2014, was in effect for diabetes mellitus, evaluated as 10 percent disabling; peripheral neuropathy of the right upper extremity, rated as 10 percent disabling; peripheral neuropathy of the right lower extremity, rated as 20 percent disabling; peripheral neuropathy of the left lower extremity, rated as 20 percent disabling; peripheral neuropathy of the left upper extremity, rated as 10 percent disabling; and impotence, rated as noncompensable. The combined rating of these disabilities was 50 percent prior to August 7, 2014. 

As of August 7, 2014, in addition to the schedular 100 percent evaluation for PTSD, service connection was in effect for diabetes mellitus, evaluated as 20 percent disabling; peripheral neuropathy of the right upper extremity, rated as 30 percent disabling; peripheral neuropathy of the right lower extremity, rated as 20 percent disabling; peripheral neuropathy of the left lower extremity, rated as 20 percent disabling; peripheral neuropathy of the left upper extremity, rated as 20 percent disabling; and impotence, rated as noncompensable. The combined rating for these disabilities, arising from a common etiology was 70 percent. 

Accordingly, he is entitled to SMC at the housebound rate from August 7, 2014. 


ORDER

An initial disability evaluation of 70 percent for PTSD prior to September 7, 2007, is granted. 

An initial disability evaluation of 100 percent for PTSD from September 7, 2007, is granted. 

A TDIU prior to September 7, 2007, is denied. 


SMC at the housebound rate from August 7, 2014, is granted. 


____________________________________________
K. Parakkal
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs